THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:17-CR-251-FL-1

UNITED STATES OF AMERICA )
) GOVERNMENT'S SENTENCING
v. ) MEMORANDUM
)
MICHAEL ALAN JONES )

The United States of America, by and through the United States Attorney for

the Eastern District of North Carolina, hereby submits this memorandum in support

of the government's objection to the determination in Defendant Michael Jones's PSR

that his federal conviction for Conspiracy to Distribute and Possess with Intent to

Distribute Cocaine Base, listed in ¶ 17 of the PSR, does not qualify as a controlled

substance offense under USSG §2K2.1(a)(2). [D.E. 50 (Amended PSR) at 16–17 (ob-

jections)].[1]  The Defendant's prior violation of 21 U.S.C. § 846 is a "controlled sub-

stance offense" as defined in USSG §4B1.2 and its commentary. Alternatively, if the

Court determines that the conviction is not a controlled substance offense, the court

should upwardly depart or vary.

## BACKGROUND

Defendant Michael Jones was charged by indictment on August 8, 2017 with

possession of a firearm and possession of ammunition by a convicted felon (Counts

---

[1]     Because the parties originally stipulated to a base offense level of 24, the proba-
tion officer applied that level notwithstanding her conclusion that the Defendant has
only one prior controlled-substance offense.  [Amended PSR at 16–17].  As the proba-
tion officer notes, however, the parties have agreed [D.E. 46] that they should be free
to argue as to the correct base offense level; we argue that the correct base level is 24.

1

One and Two), in violation of 18 U.S.C. § 922(g)(1). [Amended PSR ¶ 1]. The Defendant pleaded guilty to both counts on February 13, 2018, pursuant to a written plea agreement. [Amended PSR ¶ 3].

The Defendant has two prior felony convictions for controlled substance offenses, including Possession of Controlled Dangerous Substances with Intent to Distribute and a federal Conspiracy to Possess with Intent to Distribute and Distribution of Cocaine and Cocaine Base. [Amended PSR ¶¶ 16, 17]. Nonetheless, the PSR concludes that under USSG § 2K2.1(a), the Defendant has only one prior controlled substance offense. [Amended PSR at 16–17 (objections)]

In support of that conclusion, the probation officer cited the Fourth Circuit's decisions in United States v. McCollum, 885 F.3d 300 (4th Cir. 2018), and United States v. Whitley, 737 F. App'x 147 (4th Cir. 2018) (unpublished), reh'g denied (Sept. 4, 2018). [Amended PSR at 16–17]. The probation officer specifically concluded that Defendant's federal conviction under 21 U.S.C. § 846 is no longer a "controlled substance offense." [Amended PSR at 16–17].

## ARGUMENT

### A Drug Conspiracy Under 21 U.S.C. § 846 Is a "Controlled Substance Offense."

When the Sentencing Commission included in USSG §4B1.2 that "conspiring" to commit a "controlled substance offense" should qualify as one, USSG §4B1.2, comment. (n.1) (Application Note 1), the Commission specifically intended that a conviction under 21 U.S.C. § 846 would fall within that instruction. The alternative brings about absurdity by requiring the Court to conclude that despite the clear instruction

2

in Application Note 1 that drug conspiracies are to be included, the Commission actually meant to exclude essentially <u>all</u> federal drug conspiracies. On the contrary, every tool used to interpret USSG §4B1.2—its text, its history, and its purpose—points in the same direction: a conviction under § 846 qualifies as a "controlled substance offense."

1. **Whether an Offense is a "Controlled Substance Offense" Is Determined By Applying the Categorical Approach to a Proper Interpretation of USSG §4B1.2.**

As the Court is aware, USSG §4B1.2 provides the definitions for the two types of offenses—"crimes of violence" and "controlled substance offenses"—that qualify as predicates under the career-offender guideline, USSG §4B1.1. Those definitions are also utilized to determine the base offense level for certain offenses, as in this case, where USSG §2K2.1(a)(2) establishes a base offense level of 24 when the defendant committed his instant offense "subsequent to sustaining at least two felony convictions of either a crime of violence of a controlled substance offense," with those terms defined in USSG §4B1.2.

USSG §4B1.2(b) defines "controlled substance offense" as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

Application Note 1 to that guideline further explains that "'[c]rime of violence' and 'controlled substance offense' include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses."

3

Whether a prior offense falls within the definition of "controlled substance of-fense" is determined using the categorical approach, which looks not to the defend-ant's specific conduct but to the fact of his conviction and the statutory definition of his offense. United States v. Dozier, 848 F.3d 180, 183 (4th Cir. 2017). Defendant's PSR concludes that a conspiracy under § 846 is not a "controlled substance offense" under USSG §4B1.2 and its commentary, even though Application Note 1 specifically states that conspiring to commit a controlled-substance offense qualifies as one. The probation officer bases this on United States v. McCollum, 885 F.3d 300 (4th Cir. 2018), which excluded a conspiracy offense from the definition of "crime of violence" because the offense lacked an overt-act requirement, and United States v. Whitley, 737 F. App'x 147 (4th Cir. 2018) (unpublished), reh'g denied (Sept. 4, 2018), an un-published decision that did not address the arguments we present herein. For the reasons that follow, § 846 is, and must be, a controlled-substance offense. The guide-line's text, history, and purpose—as well as McCollum's own reasoning—require it.

2. **Clear Evidence Reveals that the Sentencing Commission Has Al-ways Intended Section 846 to Qualify Under the Plain Language of §4B1.2.**

Unlike the murder conspiracy at issue in McCollum, there is concrete proof that the Sentencing Commission has considered a conspiracy under § 846 to qualify under USSG §4B1.2 for three decades. The Commission has even stepped in to pro-tect § 846 when its inclusion was in question. It therefore cannot be that when the Commission said "conspiring" to commit a controlled-substance offense should qualify as one, it somehow meant to categorically exclude federal drug conspiracies from that instruction.

4

Crucial to the analysis that follows is the simple fact that Congress has criminalized federal drug conspiracies in <u>one</u> specific statute, 21 U.S.C. § 846, which states,

> Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

That subchapter includes the substantive drug offenses in the federal code, including § 841(a), which makes it unlawful to "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1)-(2). Both § 841 and § 846 came about together, as part of the <u>Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91-513, 84 Stat. 1260</u>, making § 846 <u>the</u> direct conspiracy counterpart to the substantive offenses found in § 841 and other parts of that subchapter.[2]

By its terms, § 846 does not contain an overt-act requirement for its commission. The Supreme Court confirmed that reading of the statute's language in <u>United States v. Shabani</u>, 513 U.S. 10 (1994), explaining that common law conspiracy did not require an overt act, and Congress's silence as to that element in § 846 confirms Congress did <u>not</u> intend such a requirement.

From the inception of the Guidelines Manual in 1987 and continuing to the present day, the Sentencing Commission has defined "controlled substance offense" in a way that demonstrates its unambiguous intent that § 846 be included.

---

[2]     Seen far less often, 21 U.S.C. § 963 criminalizes drug conspiracies specifically relating to imports and exports; it mirrors § 846. <u>See also</u> 21 U.S.C. § 960a (addressing drug crimes, including conspiracies, benefitting terrorists).

5

The very first Sentencing Guidelines Manual specified in USSG §4B1.2 that a "'controlled substance offense' as used in this provision means an offense identified in 21 U.S.C. §§ 841, 952(a), 955, 955a, 959; §§ 405B and 416 of the Controlled Substance Act as amended in 1986, and similar offenses." USSG §4B1.2(2) (1987). The commentary, in turn, was explicit about drug conspiracies:

> "Controlled substance offense" means any of the federal offenses identified in the statutes referenced in §4B1.2, or substantially equivalent state offenses. These offenses include manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, a controlled substance (or a counterfeit substance). **This definition also includes aiding and abetting, conspiring, or attempting to commit such offenses, and other offenses that are substantially equivalent to the offenses listed.**

USSG §4B1.2, comment. (n.2) (1987) (emphasis added). So in short, the original guideline unequivocally stated that: 1) a violation of § 841 was a "controlled substance offense," and 2) "conspiring . . . to commit such offenses" (i.e., § 846) was one also. Id.

The career-offender definition changed significantly in 1989. Starting that year, "crime of violence" was defined independently, instead of citing to § 16 as it originally did. USSG §4B1.2(1) (1989). As for "controlled substance offense," its definition broadened:

> The term 'controlled substance offense' means an offense under a federal or state law prohibiting the manufacture, import, export, or distribution of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, or distribute.

6

USSG §4B1.2(2) (1989). And at that time, the Commission expanded its inclusion of conspiracy offenses to encompass crimes of violence too, now specifying in Application Note 1 that the terms

> "crime of violence" and "controlled substance offense" include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses.

USSG §4B1.2, comment. (n.1) (1989).

Application Note 1 has remained in the same place in USSG §4B1.2, and with that text, from 1989 to the present.[3] It remained the same even <u>after</u> the <u>August 2016 amendment to USSG §4B1.2 (Amendment 798)</u>, which represented the biggest change in the guideline since 1989.

This history is essential for three reasons:

First, given that the Commission included "conspiring" to commit "such offenses" when the guideline specifically enumerated § 841 as a "controlled substance offense," the Commission <u>must</u> have intended to include the very statute written to criminalize conspiring to violate § 841. The Commission wrote that language <u>before</u> the "generic, contemporary offense" approach was adopted by the Supreme Court in <u>Taylor v. United States</u>, 495 U.S. 575 (1990), and so it also cannot be that the Commission intended or anticipated that such an approach would be used to exclude § 846.

---

[3] Over the years, the Commission has added additional material to Application Note 1 and revised its structure, but the beginning of Application Note 1 has, since 1989, used the same language.

Second, courts for three decades have interpreted this language exactly as expected, counting § 846 as a controlled-substance offense.  E.g., United States v. Kennedy, 32 F.3d 876, 889-90 (4th Cir. 1994); United States v. Jones, 898 F.2d 1461, 1462 (10th Cir. 1990).  If somehow the Commission did not mean to include § 846, surely it would have altered the definition long before now.  Cf. Shabani, 513 U.S. at 14 ("Congress' silence" about an overt-act requirement "speaks volumes").

Third, the Commission has even intervened to protect the inclusion of § 846 as a controlled-substance offense when it was threatened.  The litigation began in 1993 with the D.C. Circuit's decision in United States v. Price, 990 F.2d 1367.  Price held that the Commission exceeded its statutory authority when it promulgated Application Note 1 relying only on the statute mandating the career-offender guideline, 28 U.S.C. § 994(h), which did not list conspiracies.  990 F.2d at 1369-70.

Price involved a conspiracy under 18 U.S.C. § 371, but the Fifth and Eighth Circuits soon agreed with Price's reasoning in cases that specifically involved whether the Commission could extend the definition of "controlled substance offense" to a conspiracy under § 846.  United States v. Mendoza-Figueroa, 28 F.3d 766, 767-68 (8th Cir. 1994); United States v. Bellazerius, 24 F.3d 698, 701 (5th Cir. 1994).

The majority of the circuits, including the Fourth Circuit, rejected Price.  E.g., Kennedy, 32 F.3d at 889-90; United States v. Jackson, 60 F.3d 128, 130-32 (2d Cir. 1995).  The Fourth Circuit in Kennedy explained that "conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 . . . would **clearly qualify** as a career offender

8

offense under the Guidelines provisions and commentaries," and that § 994(h) was "not the sole basis for the career offender provision." 32 F.3d at 888 (emphasis added).

In an amendment effective November 1, 1995, the Commission resolved the circuit split, making clear its intention that § 846 should qualify as a controlled-substance offense. Amendment 528 to the Guidelines Manual "repromulgated" Application Note 1 <u>without change</u>, altering only the background commentary to specify that the Commission was also relying on its "general guideline promulgation authority under 28 U.S.C. § 994(a)-(f)." <u>USSG Supp. to App. C, amend. 528 (1995)</u>. And in its amendment notes, the Commission explained that the amendment "responds to a decision by the [D.C.] Circuit in <u>United States v. Price</u>." <u>Id.</u> The amendment note approvingly cites cases from at least <u>five</u> circuits (including <u>Kennedy</u>) that recognized § 846 as a controlled-substance offense under Application Note 1. <u>Id.</u> Amendment 528 is unexplainable if the Commission did not intend § 846 to qualify as a controlled-substance offense.

Other portions of the Guidelines Manual further demonstrate the Commission's longstanding view that § 846 is a "conspiracy" offense. For example, at the time of the original USSG §4B1.2 and its amendment in 1989, Chapter 2D of the Guidelines Manual contained a guideline specifically for "Attempts and Conspiracies," which read,

> (a) Base Offense Level: If a defendant is convicted of participating in an incomplete conspiracy or an attempt to commit any offense involving a controlled substance, the offense level shall be the same as if the object of the conspiracy or attempt had been completed.

USSG §2D1.4 ([1987](#) and [1989](#)).  The statutory authority for that provision?  "21 U.S.C. §§ 846, 963."  Id.  The Commission explicitly counted a conviction under § 846 as a "conspiracy" under the drug chapter of the Guidelines at the same time the Commission stated that "conspiring" to commit a controlled-substance offense qualified as one.

In 1992, the Sentencing Commission amended nearly every guideline in Chapter 2D to include "Attempt or Conspiracy" in its title, thus eliminating the need for USSG §2D1.4 in an effort to clarify and simplify the guidelines.  [USSG Supp. to App. C, amend. 447 (1992)](#).  As a result, the Statutory Appendix to the Guidelines Manual specifies various drug guidelines in Chapter 2D for the offense of violating § 846, based on those titles, "Attempt or Conspiracy."  The Commission clearly thought, and still thinks, that § 846 is a "conspiracy" offense.

All of this demonstrates that the Commission has enumerated drug conspiracies as qualifying under USSG §4B1.2 for as long as the Guidelines Manual has existed.  Courts have always thought that "conspiring" to commit a controlled-substance offense under the commentary to USSG §4B1.2 meant a violation of § 846.  And when there was a question as to the Commission's intention to use its broad authority to include such conspiracies, and specifically § 846, the Commission swiftly clarified that such conspiracies should qualify.

3. **The Court's Reasoning in McCollum Demonstrates That a Drug Conspiracy Under USSG §4B1.2 Need Not Require An Overt Act.**

The probation officer relies on two cases, McCollum and Whitley, to argue against the unambiguous intent of the Sentencing Commission to include § 846 as a

10

controlled-substance offense. <u>Whitley</u>, however, is an unpublished decision, which is not binding on this Court and does not address the arguments we make here. <u>McCollum</u> is published, but its reasoning actually demonstrates that courts must consider the Commission's intent as to Application Note 1, just as the Fourth Circuit considered it in that case.

<u>McCollum</u> examined whether conspiracy to commit murder in aid of racketeering qualified was a "crime of violence" under USSG §4B1.2 and its commentary. 885 F.3d at 305-06. In doing so, the Fourth Circuit observed that there were dozens of federal conspiracy statutes, and thus there was "no single federal definition of conspiracy that we can assume the Commission <u>intended to adopt</u> when it included conspiracy in the commentary to § 4B1.2." <u>Id.</u> (emphasis added). The ultimate focus was intent.

There may be no single definition for violent conspiracies, but drug conspiracies are different. The United States Code has a specific subchapter for prohibited narcotics offenses, Title 21, Chapter 13, Subchapter I. And contained within that subchapter are the federal controlled-substance offenses, specifically the prohibited acts listed in 21 U.S.C. §§ 841-44. Section 846, in turn, ensures criminal penalties matching the substantive offense for anyone who "conspires to commit any offense defined in this subchapter." <u>McCollum</u> looked to whether there was one single definition because, if so, it could then assume the Commission intended to rely on it. For drug conspiracies, there <u>is</u> one single federal definition: § 846. Thus, per <u>McCollum</u>,

we can assume the Commission intended to rely on § 846 for its definition of drug conspiracy.

Moreover, McCollum observed that it had to apply the "generic, contemporary meaning" of conspiracy for crime-of-violence conspiracies, citing to the Commission's note to its August 2016 amendment to USSG §4B1.2, which states,

> The "enumerated offense clause" identifies specific offenses that qualify as crimes of violence. In applying this clause, courts compare the elements of the predicate offense of conviction with the elements of the enumerated offense in its "generic, contemporary definition."

McCollum, 885 F.3d at 305-06 (quoting USSG Supp. to App. C, amend. 798 (2016)). But drug conspiracies are different, in two ways:

First, the amendment notes to the 2016 Amendment, on which McCollum relied, were not referring to the commentary including conspiracy, nor do those notes refer to controlled-substance offenses. Instead, the 2016 amendment notes were expressly referring to crimes of violence under the enumerated offenses clause now found in USSG §4B1.2(a)(2)—the clause that enumerates substantive violent crimes such as murder, arson, and robbery. USSG §4B1.2(a)(2) was heavily modified in the 2016 Amendment, but it has nothing to do with controlled-substance offenses. The 2016 Amendment did not in any way modify Application Note 1's inclusion of conspiracy, which has been left materially unchanged since 1989. The Commission's amendment notes in 2016 were not discussing how to interpret Application Note 1, but rather the portions of the guideline that were actually part of the 2016 Amendment.

And when the Sentencing Commission <u>has</u> spoken as to its intended meaning of "conspiring" under Application Note 1, as it did in Amendment 528, it made clear that § 846 qualifies.

Second, the "contemporary, generic" definition of a <u>drug</u> conspiracy must lack an overt-act requirement anyway, since all federal drug conspiracy statutes lack such a requirement. Under <u>McCollum</u>'s mathematical reasoning, <u>see</u> 885 F.3d at 308, a contemporary drug conspiracy must qualify even without an overt act, since the Commission intended that both state and federal conspiracies could qualify and excluding § 846 would essentially eliminate all federal drug conspiracies. Crucially, <u>McCollum</u> did not address or discuss § 846, and it certainly did not express any opinion as to the generic definition of a drug conspiracy. Instead it focused wholly on crimes of violence. If the Commission's intention and its plain language are to be given any consideration whatsoever—and <u>McCollum</u> says they must be—then § 846 is categorically a "controlled substance offense."

4.    **The Supreme Court Expects Courts to Avoid the Absurd Results That Will Occur Here.**

The Supreme Court's case law in this area, from <u>Taylor v. United States</u>, 495 U.S. 575, 593-94 (1990), to <u>United States v. Hayes</u>, 555 U.S. 415, 418 (2009), to <u>United States v. Castleman</u>, 134 S. Ct. 1405, 1413 (2014), and <u>Voisine v. United States</u>, 136 S. Ct. 2272, 2280 (2016), repeatedly demonstrates that courts <u>must</u> interpret these recidivist provisions in a way that avoids absurdity and ensures their proper function. <u>Taylor</u>, for example, adopted the contemporary, generic definition of "burglary" in part because using the common law definition "would come close to nullifying that

term's effect in the statute." 495 U.S. at 594. <u>Hayes</u>, in turn, made the domestic-relationship aspect of a "misdemeanor crime of domestic violence" a factual question instead of a categorical element, because the latter approach would have excluded most states' domestic-violence offenses. 555 U.S. at 427.

Here, excluding § 846 under Application Note 1 would nullify its effect as to federal drug conspiracies across the board, and it would do so in the federal Guidelines Manual promulgated by the federal Sentencing Commission. The Supreme Court, as highlighted above, requires courts to avoid these kinds of outcomes. <u>See also</u> <u>United States v. Turner</u>, 998 F.2d 534, 538 (7th Cir. 1993) ("Courts ought not read the Guidelines in a way that makes the Sentencing Commission look foolish.").

Indeed, disqualifying § 846 from the definition of "controlled substance offense" brings results that are "not just marginally 'underinclusive,' as the results of the categorical approach sometimes are, but downright absurd." <u>United States v. Rivera-Constantino</u>, 798 F.3d 900, 904-05 (9th Cir. 2015) (internal citation omitted). Three brief examples are useful:

First, in order to be a career offender, a defendant must have two prior state or federal convictions for crimes of violence or controlled-substance offenses. USSG §4B1.1(a). But beyond that, the defendant's conviction in the instant case—by definition a <u>federal</u> offense—must also be for a qualifying predicate. <u>Id.</u> So if no defendant whose offense of conviction is § 846 can qualify as a career offender, wide sentencing disparities result. As an illustration, imagine the following two defendants:

|  | **Defendant #1** | **Defendant #2** |
|---|---|---|
| **_Instant Offense_** | Conspiracy to traffic in <u>5 kg</u> of cocaine, in violation of 21 U.S.C. § 846 and § 841(a)(1) | Possession with intent to distribute <u>a quantity</u> of cocaine base, in violation of 21 U.S.C. § 841(a)(1) |
| **_Prior Offense #1_** | NC Voluntary Manslaughter ||
| **_Prior Offense #2_** | NC Sale of Cocaine ||
| **Result Under <u>Whitley</u>** | **<span style="color:red">Not</span>** a Career Offender | Career Offender |

There is simply no way the Commission intended this, and absurdity results where the more culpable receive the lighter punishment.

Second, absurdity lurks in the comparison of different conspiracies. The generic federal conspiracy statute, 18 U.S.C. § 371, does require an overt act, and thus, under the probation officer's approach, a (rarely seen) § 371 conspiracy with an object of trafficking in narcotics would be a controlled-substance offense. But § 371 carries a statutory maximum of five years' imprisonment—generally far less than under § 846, which is "subject to the same penalties as those prescribed for the [substantive] offense." So for a defendant conspiring to traffic in 5 kilograms of cocaine, his sentence would be "not [] less than 10 years" under § 846 (via § 841(b)(1)(A)), while his sentence for the same conspiracy under § 371 would be not more than 5 years. Somehow, the <u>lesser</u> offense would be a controlled-substance offense, while the <u>greater</u> offense would not.

A third problem arises from comparing those who more often engage in conspiracies—the leaders, the "kingpins"—with the street-level dealers who physically traffic in drugs for them. Kingpins are often prosecuted under § 846 because they are less likely to be involved in the hand-to-hand sales. Now, many such offenders will

Case 5:17-cr-00251-FL   Document 52   Filed 12/05/18   Page 15 of 24

not be found to have committed controlled-substances offenses, while their underlings will be. This is "precisely the sort of illogical disparity in sentencing that led to the adoption of the Sentencing Guidelines in the first place." United States v. Withers, 100 F.3d 1142, 1149 (4th Cir. 1996).

Excluding § 846 from the definition of "controlled substance offense" rejects the plain text of the guideline, its 30-year history, the Sentencing Commission's clear intent, and common sense. Under McCollum those factors must be considered.

5. **Whitley Is Unpublished, and District Courts in the Fourth Circuit Can Reject, and Have Rejected, Its Reasoning.**

That brings us to Whitley, which, unlike McCollum, addressed § 846. It held that § 846 cannot qualify as a "controlled substance offense" in light of McCollum, but two important considerations apply:

First, Whitley is unpublished and thus is not binding on this Court. It did not involve oral argument, nor did it address the arguments we present here on the application of McCollum. Instead, the briefing in Whitley occurred before McCollum was decided, and Whitley was held in abeyance for that case. Then, after McCollum was decided, the Fourth Circuit decided Whitley without further briefing. We recognize that the Fourth Circuit denied the government's subsequent petition for panel rehearing, Whitley, No. 17-4343 (4th Cir.) (ECF. No. 42) (petition for rehearing), but such petitions are rarely granted in any case, see 4th Cir. L. R. 40(a), and Whitley remains an unpublished decision regardless.

Second, district courts have begun considering Whitley, and at least two district courts have already rejected its application to § 846. United States v. Heyward,

16

No. 8:17-CR-527-PWG (D. Md.) (Grimm, J.) (sentencing hearing on June 13, 2018, no appeal filed); United States v. Jimenez, No. 5:09-CR-32-MFU-1 (W.D. Va.) (Urbanski, J.) (sentencing hearing on Aug. 22, 2018, no appeal filed or expected).[4] We urge the Court here to do the same.

## 6. On a More Basic Level, Neither McCollum Nor Whitley Can Overrule the Fourth Circuit's Published Decision in Kennedy.

In the event the Court determines that McCollum compels the conclusion that § 846 does not qualify as a "conspiracy" under Application Note 1, the United States preserves the argument that McCollum was wrongly decided. If McCollum can be read to exclude all federal drug conspiracy statutes from the definition of "controlled substance offense," then that itself demonstrates McCollum must not be correct. But even if the Court interprets McCollum that way, it should still consider § 846 a "controlled substance offense" for another reason: an older, published Fourth Circuit decision already holds that § 846 "would clearly qualify" under USSG §4B1.2 and the commentary providing that "aiding and abetting, conspiring, and attempting to commit [drug] offenses" qualifies. United States v. Kennedy, 32 F.3d 876, 888 (4th Cir. 1994) (emphasis and alteration in Kennedy). Kennedy is a binding textual interpretation of USSG §4B1.2 and Application Note 1, and as the older decision it controls over McCollum to the extent they conflict. United States v. McMellon, 387 F.3d 329,

---

[4]     The Fourth Circuit on October 30, 2018, ordered panel rehearing to consider an argument raised for the first time on appeal that § 846 does not qualify. United States v. Williams, No. 17-4352 (4th Cir.) (ECF No. 64). Judge Dever overruled our objection on this issue in United States v. Judd, 5:17-CR-413-D (E.D.N.C. 2018). There may be other cases in the district and appellate courts of which undersigned counsel are not aware.

332–33 (4th Cir. 2004). Notably, <u>Kennedy</u> involved a challenge to the Commission's authority to promulgate Application Note 1, and part of the Court's response rejecting that challenge mirrors the government's argument in this memorandum:

> By including conspiracy as a career offender offense, the Commission ensured that persons engaged in a collective drug distribution scheme would receive the same treatment as individual violators of similarly serious drug trafficking laws. <u>As a matter of simple logic, a conviction of conspiracy to distribute controlled substances would seem to qualify as a federal narcotics offense</u>.

<u>Kennedy</u>, 32 F.3d at 889-90 (emphasis added).

The "simple logic" that § 846 qualifies is the law of the circuit. "A decision of a panel of [the Fourth Circuit] becomes the law of the circuit and is binding on other panels unless it is overruled by a subsequent en banc opinion of [the Fourth Circuit] or a superseding contrary decision of the Supreme Court." <u>Etheridge v. Norfolk & W. Ry. Co.</u>, 9 F.3d 1087, 1090 (4th Cir. 1993) (citation and internal quotation marks omitted). <u>Kennedy</u>—which post-dated <u>Taylor</u>—has not been overruled, undermined, or even called into question. Neither <u>McCollum</u> nor <u>Whitley</u> mentions <u>Kennedy</u> at all or addresses how <u>Kennedy</u> can be set aside. <u>Kennedy</u> is therefore the controlling decision on whether § 846 qualifies as a "controlled substance offense." It holds that it does.

## 7. Section 846 Qualifies Under the Language of USSG §4B1.2(b) Itself, Regardless of Whether § 846 Is a "Conspiracy" After <u>McCollum</u>.

Finally, we also observe that even if <u>Kennedy</u> is not controlling on this matter, and *even if <u>McCollum</u> demands that a conviction under § 846 is not a "conspiracy"* under Application Note 1, a conviction under § 846 still qualifies based text of the

guideline itself, as informed by its commentary. That is because § 846 is an "offense under federal law or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance" with the intent to do those things. USSG §4B1.2(b). As Judge William Pryor, the acting chair of the Sentencing Commission, wrote for the Eleventh Circuit in United States v. Lange, "[W]e must not construe 'prohibit' too narrowly" in USSG §4B1.2(b), because its interpretation is informed by Application Note 1. United States v. Lange, 862 F.3d 1290, 1295 (11th Cir. 2017). The term "prohibit" can mean "[t]o forbid . . . by a command, statute, or law, or other authority," Judge Pryor explained in Lange, and it can also mean, "to prevent, hinder." Id. (quoting Webster's Second International Dictionary 1978 (1961)). Therefore, the term "controlled substance offense" "cannot mean only offenses that forbid conduct outright, but must also include related inchoate offenses that aim toward that conduct," including conspiracies to do the activities listed in USSG §4B1.2. Id. Properly understood that way, with the commentary informing the Court's interpretation of the guideline text, § 846 qualifies. Like the inchoate offense at issue in Lange, a conspiracy under § 846 "essentially forbids" the object of the conspiracy itself, and that is true regardless of whether § 846 meets the generic definition of "conspiracy." See id.

Moreover, Application Note 1 states that "controlled substance offense" "include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses" (emphasis added). The word "include[s]" demonstrates on its face that

the qualifying inchoate offenses are not limited to the listed three, and the Commission has even expressly instructed that, when the Guidelines Manual defines terms, "[t]he term 'includes' is not exhaustive." USSG §1B1.1, comment. (n.2). The Fourth Circuit recognized this in United States v. Medina-Campo, 714 F.3d 232, 236–37 (4th Cir. 2013), where the court counted as a "drug trafficking offense" under USSG §2L1.2 (2011) a state offense that included solicitation, an inchoate offense not listed at all in Application Note 5 to USSG §2L1.2 (2011). 714 F.3d at 237–38.[5] Medina-Campo recognized that the list of inchoate offenses in the application note is not exhaustive, and that solicitation qualified because it was "integral to the trafficking process," like the listed inchoate offenses.

As the Medina-Campo court explained,

> All of these myriad theories of criminal liability [the listed inchoate offenses], though conceptually quite distinct, are nonetheless integral to the trafficking process, as is solicitation—an act that often assists in identifying the market for the illegally trafficked substances, and which may well prove the catalyst for a subsequent conspiracy, attempt, or aiding and abetting. These drug offenses are therefore not "separate crimes" for federal sentencing purposes, but are instead simply different ways to commit the broad, unitary offense of drug trafficking described in the Guidelines.

714 F.3d at 238. Thus the inchoate offenses included within the definition of "drug trafficking offense" in USSG §2L1.2 (2011) were not limited to conspiracy, attempt,

---

[5]    The 2011 version of USSG §2L1.2 defined "drug trafficking offense" materially the same as the definition of "controlled substance offense" here, and Note 5 to USSG §2L1.2 (2011) included the same inchoate offenses as Note 1 to USSG §4B1.2 does.

and aiding and abetting—the three examples provided in the application note; instead, other inchoate offenses that are similarly integral to the trafficking process, like solicitation, were included as well.

Here, even if <u>McCollum</u> demands that § 846 is not a "conspiracy" as listed in Application Note 1, the Court still must consider whether it falls within the definition of "controlled substance offense" in USSG §4B1.2(b), as informed by Application Note 1. It does. The lack of an overt-act requirement does not render § 846 no longer integral to the trafficking process, especially given that overt acts generally <u>need not be committed by the defendant himself</u>, nor must the overt act even be itself criminal. <u>See, e.g.</u>, <u>United States v. Gillion</u>, 704 F.3d 284, 298 n.4 (4th Cir. 2012). Congress has determined that federal drug conspiracies do not require an overt act, and yet they are punished <u>exactly the same</u> as completed offenses. <u>See</u> <u>Shabani</u>, 513 U.S. at 14. The Sentencing Commission, likewise, provides the <u>same</u> guidelines calculation for a violation of § 846 as it does for the completed offense. <u>See generally</u> USSG Ch.2, Pt.D; USSG App. A (entry for § 846). And perhaps most importantly, three decades of unambiguous history shows that the Commission has always intended and expected § 846 to be a "controlled substance offense." Neither <u>McCollum</u> nor <u>Whitley</u> considered this argument, and it leads to the correct outcome even notwithstanding <u>McCollum</u>. Whatever the term for the inchoate offense in § 846 is after <u>McCollum</u>, that crime remains a "controlled substance offense" under USSG §4B1.2(b) and its commentary.

### If the Court Concludes that the Defendant's Conviction Under § 846 Is Not a Controlled Substance Offense, The Court Should Upwardly Depart or Vary

The Sentencing Guidelines expressly encourage departure when a defendant's criminal history category substantially under-represents the seriousness of his or her past criminal conduct or the likelihood that he or she will commit further crimes. USSG §4A1.3; United States v. Cash, 983 F.2d 558, 560 (4th Cir. 1993). Thus, the ground for an upward departure relied on in support of this motion is an encouraged factor for departure not otherwise taken into consideration in the applicable guideline sections. Consequently, the Court is free to upwardly depart if it finds that the encouraged factor is present.

Defendant's criminal history demonstrates the danger he poses to society and his high likelihood of recidivism. At forty-six years of age, Defendant is facing sentencing for his second weapons conviction and his third drug conviction, including his second federal drug conviction. [PSR ¶¶ 14-17]. Two of Defendant's prior convictions were unscored because they fell outside of the applicable time period for scoring. [PSR ¶¶ 14-15]. Twenty years after Defendant's first drug conviction, Defendant continues to possess and distribute controlled substances, and nearly thirty years after his first weapons conviction, Defendant was found in possession of several illegal, stolen firearms. Defendant's persistent disrespect for the law demonstrates that Defendant has gone undeterred by his interactions with the judicial system and is likely to recidivate. Defendant has demonstrated his failure to modify his criminal behavior.

In determining the extent of the departure from a criminal history category III, sentencing courts are to apply an incremental approach to the Guidelines, moving

down the sentencing table to the next higher offense level to the appropriate guideline range. Here, a base offense level of 24 and a criminal history category of no less than IV would provide a more accurate assessment of the Defendant's likelihood of recidivism.

## **CONCLUSION**

For these reasons, the United States respectfully submits that a base offense level of 24 applies because the Defendant has two prior convictions, including a conviction under 21 U.S.C. § 846, that properly qualify as "controlled substance offense[s]" under USSG §4B1.2. In the alternative, the Court should upwardly depart or vary to properly account for the Defendant's underrepresented criminal history and high likelihood of recidivism.

Respectfully submitted, this 5th day of December, 2018.

ROBERT J. HIGDON, JR.
United States Attorney

By:  /s/ Scott A. Lemmon
SCOTT A. LEMMON
Assistant United States Attorney
Criminal Division
310 New Bern Avenue, Suite 800
Raleigh, North Carolina 27601
Telephone: 919-856-4530
Fax: 919-856-4487
Email: Scott.Lemmon@usdoj.gov

By:  /s/ Phillip A. Rubin
PHILLIP A. RUBIN
Assistant United States Attorney
Appellate Division
310 New Bern Avenue, Suite 800
Raleigh, North Carolina 27601
Telephone: 919-856-4530
Fax: 919-856-4487
Email: Phillip.Rubin@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing Memorandum has, this, the 5th

day of December, 2018, been served upon the following by ECF filing:

Lauren Harrell Brennan
Federal Public Defender's Office
150 Fayetteville Street, Suite 450
Raleigh, NC 27601
919-856-4236
Fax: 919-856-4236
Email: lauren_brennan@fd.org
*Counsel for Defendant*

By:     /s/ Scott A. Lemmon
            SCOTT A. LEMMON
            Assistant United States Attorney
            Criminal Division
            310 New Bern Avenue, Suite 800
            Raleigh, North Carolina 27601
            Telephone: 919-856-4530
            Fax: 919-856-4487
            Email: Scott.Lemmon@usdoj.gov